**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| **DAYAKAR MOPARTY** | **DOCKET NO. 2:25-cv-0472** |
| | **SECTION P** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **KATHLEEN TOOMEY, ET AL** | **MAGISTRATE JUDGE LEBLANC** |

**REPORT AND RECOMMENDATION**

Before the court is a Motion to Dismiss filed on June 16, 2025, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure by the Respondent, Warden Felipe Martinez. Doc. 9. This motion is in response to the petition filed by Dayakar Moparty, claiming that the Bureau of Prisons (BOP) refused to credit him for participation in programming and productive activities under the First Step Act (FSA) for the period between September 22, 2022, and November 3, 2024, due to Moparty not being at his designated institution during this time frame. Moparty, through counsel, filed an opposition to the motion on July 7, 2025. Doc. 12. On July 30, 2025, Respondent filed a Reply brief (doc. 16) and on August 6, 2025, Moparty filed a brief in reply (doc. 17). The motion is now ripe for review.

The motion has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. For the following reasons, **IT IS RECOMMENDED** that the Motion to Dismiss (doc. 9) be **GRANTED**.

I.      **BACKGROUND**

Dayakar Moparty is an inmate at the minimum-security Federal Prison Camp at Oakdale II Federal Correctional Institution ("FCIO"). He is currently serving a term of 108 months imprisonment and 24 months imprisonment, which run concurrently and were imposed by the

-1-

United States District Court for the Southern District of Texas on November 8, 2019, and September 12, 2024, respectively. *See* doc. 1-3, Criminal Judgments in *United States v. Moparty,* 4:17-CR-290 (SDTX), DE-288; *United States v. Moparty*, 18-CR-279 (SDTX), DE-723[1].

According to his most recent FSA earned time credit assessment dated May 5, 2025, Petitioner arrived at his designated BOP facility, completed his first assessment, and was scored as a minimum risk recidivism level on October 13, 2020. *See* FSA Time Credit Assessment, doc. 9-2, p. 3. Accordingly, he earned at a rate of 10 days per month from October 13, 2020, through May 9, 2021, accruing FSA time credits for participation in 208 program days. *Id*. At that time, BOP increased his earning rate to 15 days per month, and he has earned at that rate since then, giving him the benefit of having received his second LOW risk assessment as of May 9, 2021. *Id*. From May 9, 2021, until October 8, 2021, he accrued FSA time credits for participation in 152 program days at a rate of 15 days per month. *Id*.

On October 7, 2021, Petitioner was transported outside of the BOP institution and placed in holdover status until October 20, 2021, rendering him ineligible to accrue FSA time credits because he was not "successfully participating" in EBRR or PAs during that time frame. *Id*; *see also* Inmate History ADM-REL, doc. 9-2, p. 12.  Once he returned to his BOP facility on October 20, 2021, he began accruing FSA time credits at 15 days per month until September 22, 2022, accruing FSA time credits for participation in 337 program days. *See* doc. 9-3, p. 13.

---

[1] *See* doc. 1-3:  In Case#4:17CR00290 Moparty was sentenced for twenty-one counts, Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. § 1349 (Count 1), Aiding and Abetting Health Care Fraud in violation of 18 U.S.C. § 1347 and § 2, (Counts 2-18), and Aiding and Abetting Money Laundering in violation of 18 U.S.C. § 1957 and § 2, (Counts 19-21). In Case #4:18CR00279 Moparty was sentenced on one count-Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. § 1349.

According to his Petition, on September 22, 2022, after being sentenced on the 2017 Indictment, Moparty left FCIO on a writ out of the Southern District of Texas for the 2018 Indictment, Case#18-Cr-279.  *See* doc. 1, p. 3

When Petitioner was transferred out of FCIO pursuant to a federal writ on September 21, 2022, his status changed to "in transit", which is a status outside the BOP institution, rendering him ineligible to earn FSA time credits.  *See* FSA Time Credit Assessment, doc. 9-3, p. 13; *see also* Inmate History ADM-REL, doc. 9-2, p. 12.  From September 22, 2022, to January 19, 2023, he was housed at a GEO Group facility, Joe Corley Processing Center.  Doc. 1, p. 3.   On January 19, 2023, he appeared in the United States District Court for the Southern District of Texas for the 2018 Indictment.  *Id*.  From January 19, 2023, to August 14, 2024, Moparty was housed at a GEO Group facility, Joe Corley Processing Center.  *Id*.   During Petitioner's time "in transit," he was in the custody of the United States Marshal Service ("USMS"), not the BOP, and was housed at a non-BOP facility, where he could not participate in EBRR programs or PAs assigned by the BOP.  *See* FSA Time Credit Assessment, doc. 9-3, p. 13; *see also* Inmate History ADM-REL, doc. 9-2, p. 12.  Petitioner remained in "in transit" status and outside BOP custody until August 14, 2024.  *Id*.  On August 14, 2024, his status changed to "holdover" because he was transferred to a USMS bed at a BOP facility (FDC Houston) for the purpose of a court appearance, where he remained until November 1, 2024. *See* FSA Time Credit Assessment, doc. 9-3, p. 13; *see also* Inmate History ADM-REL, doc. 9-2, p. 12.  While Petitioner was housed at FDC Houston in "holdover" status, he did not enroll in any educational or recreational programs or activities and did not participate in any assigned EBRR programs or PAs. *See* Declaration of Emily Pullen, Inmate Education Supervisor at FDC Houston, doc. 9-1. Accordingly, he was not eligible to accrue FSA time credits

during his time housed at FDC Houston. From November 1, 2024, to November 5, 2024, Moparty was housed at a GEO Group facility, Joe Corley Processing Center. *Id*.

On November 5, 2024, Petitioner returned to his designated BOP facility, where he continues to be housed today, and began accruing FSA time credits once again at a rate of 15 days per month. *See* FSA Time Credit Assessment, doc. 9-1, pp. 13-15.  In total, as of May 5, 2025, Petitioner had earned 405 FSA time credits (based on 879 programming days successfully completed thus far), of which 365 days can be applied towards early release (i.e. early transfer to supervised release), and the remaining 40 days are available to be applied to transfer to prerelease custody. *Id*.  The BOP has determined that Petitioner did not accrue FSA time credits for time he spent outside BOP custody in "in transit" or "holdover" status from October 8, 2021, through October 20, 2021 and September 22, 2022 through November 4, 2024, for a total of 786 ineligible days. *Id*; *see also* Inmate History ADM-REL, doc. 9-2, p. 12.  Petitioner's projected release date (PRD), via good conduct time (GCT) release, also known as his statutory release date (SRD), is June 12, 2028. *See* FSA Time Credit Assessment, doc. 9-1, pp. 13-15.  In other words, without considering any FSA earned time credits, Petitioner is projected for release on June 12, 2028.

Moparty filed the instant petition claiming that the Bureau of Prisons (BOP) refused to credit him for participation in programming and productive activities under the First Step Act (FSA) for the period between September 22, 2022, and November 3, 2024, due to Petitioner not being at his designated institution during this time frame.  He challenges the BOP's "unlawful revocation of 774 earned First Step Act (FSA) Time Credits, which has resulted in the unconstitutional extension of his term of incarceration."  Doc. 12, pp. 1-2.

## II.    LEGAL STANDARDS OF REVIEW

### A.    *12(b)(1) Motion to Dismiss*

A motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) may be treated as either a facial or factual challenge to the court's jurisdiction. *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981) *cert. denied*, 102 S.Ct. 396 (1981). Facial attacks, which question the sufficiency of the pleadings, require the court to consider the allegations in the complaint as true. *See Spector v. L Q Motor Inns, Inc.,* 517 F.2d 278, 281 (5th Cir. 1975). During factual challenges to subject matter jurisdiction, however, courts are allowed to look outside of the pleadings and no presumptive truthfulness attaches to the allegations in the complaint. *Williamson*, 645 F.2d at 413 (citing *Mortensen v. First Federal Savings and Loan Association*, 549 F.2d 844, 891 (3rd Cir. 1977)).

The district court has the ability to dismiss a complaint for lack of subject matter jurisdiction based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."    *Williamson*, 645 F.2d at 413.    If dismissal is sought for a jurisdictional defect that centers upon the lack of congressional waiver of the government's sovereign immunity, resolution is never appropriate by way of summary judgment but must be resolved by way of a motion to dismiss for lack of subject matter jurisdiction. *Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1156-57 (5th Cir. 1981).

### B.    *12(b)(6) Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(6) governs dismissal of a case for failure to state a claim. The Court should dismiss a complaint if, taking all allegations of material fact as true and construing them in the light most favorable to the nonmoving party, the complaint fails to state a

claim entitling the plaintiff to relief. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007), the Supreme Court abandoned the then-familiar rubric of *Conley v. Gibson*, 355 U.S. 41, 45 46 (1957), under which a complaint was deemed sufficient "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly* required that a complaint include "[f]actual allegations [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To withstand a motion to dismiss, a complaint "must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. at 555. Rather, a complaint must "plausibly" show a valid claim. Id. at 557.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court applied the pleading standards of Rule 8 of the Federal Rules of Civil Procedure, as clarified in *Twombly*, to a *Bivens* case alleging religious discrimination by a post September 11, 2001, immigration detainee. *Iqbal* held that *Twombly*'s plausibility standard is part and parcel of Rule 8's requirement that every complaint "show[…] that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679, 684; *Twombly*, 550 U.S. at 555. Amplifying *Twombly*'s holding, *Iqbal* emphasized that "Rule 8[…] does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79. If the "allegations are conclusory," they are "not entitled to be assumed true." *Id*. at 681. To determine the adequacy of a Constitutional claim for money damages against a federal officer, conclusory allegations are disregarded, and a court is to ask whether well pled factual allegations plausibly suggest that a defendant personally violated one or more of a plaintiff's clearly established Constitutional rights. *Id*. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief …." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations

are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678, citing *Twombly*, 550 U.S. at 555. Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id*. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. *Id*. at 678-69.

Usually, in considering a motion to dismiss pursuant to Rule 12(b)(6), a district court must limit itself to the face of the complaint including attachments thereto. However, applicable jurisprudence establishes exceptions to this restriction wherein the court may take judicial notice of documents or information which constitute matters of public record when considering a Rule 12(b)(6) motion to dismiss. *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994); *Haygood v. Begue*, 2014 WL1320152 at 1 (W.D. La. March 31, 2014). The courts may consider documents filed in support of a motion to dismiss under Rule 12(b)(6), without converting the motion to a motion for summary judgment, when these documents are referenced in the complaint and central to the claim. *Taylor v. City of Shreveport,* 798 F.3d 276, 279 & n.4 (5th Cir. 2015); *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

### III.    LAW AND ANALYSIS

#### 1.  *First Step Act*

The First Step Act of 2018 (FSA) is a recidivism reduction tool that authorizes the BOP to grant earned time credits to eligible inmates to be applied towards either prerelease custody or supervised release in accordance with certain requirements. *See* 18 U.S.C. § 3624(g). "An eligible inmate … may earn FSA time credit if he or she is successfully participating in [Evidence-based

Recidivism Reduction (EBRR)] programs or [Productive Activities (PAs)] that the Bureau has recommended based on the inmate's individualized risk needs assessment." 28 C.F.R. § 523.42(b); *see* 18 U.S.C. § 3632(b).

The FSA is silent as to when an inmate must begin earning FSA time credits, but it does prohibit an inmate from earning FSA time credits prior to the commencement of his or her criminal sentence. 18 U.S.C. § 3632(d)(4)(B). The FSA provides that the Attorney General (and by delegation the BOP) should create a risk and needs assessment system (the "System") which shall be used to, among other things, "determine when to provide incentives and rewards for successful participation in [EBRR] programs or [PAs]". *See* 18 U.S.C. §3632(a)(6) (emphasis added). Accordingly, pursuant to BOP regulations, an inmate cannot start earning FSA time credits until after he arrives at the designated BOP facility where his sentence will be served. 28 C.F.R. § 523.42(a). After arrival, as part of the System, the inmate's PATTERN score and needs assessments (SPARC-13) are completed. The SPARC-13 should be completed within 30 days. If the inmate fails to complete any portion of the SPARC-13, he will be considered to have opted out and will not earn FSA time credits until he completes the SPARC-13. Using the results of the SPARC-13, BOP staff recommend programming tailored to that inmate. If the inmate declines a recommended program or productive activity, he will be considered to have opted out and will not earn FSA time credits. Otherwise, he will be placed in the program, or on a waitlist. *See* Program Statement 5410.01, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4) at 8 (available at www.bop.gov).

As a default, all inmates eligible to earn FSA time credits are awarded 10 days for every 30 days of programming: "A prisoner shall earn 10 days of time credits for every 30 days of

**successful participation** in [EBRR] programming or [PAs]." 18 U.S.C. § 3632(d)(4)(A)(i) (emphasis added). Some inmates may qualify to earn an additional five days per month:

> A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

18 U.S.C. § 3632(d)(4)(A)(ii); *see also* 28 C.F.R. § 523.42(c). The FSA instructs the BOP on how to apply the earned time credits to an eligible inmate's sentence:

> Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

18 U.S.C. § 3632(d)(4)(C) (emphasis added).

While this statute uses terms like "shall," the language is not absolute. Instead, the inmate may apply earned credits only if eligible to do so, as determined by the BOP. *See* 18 U.S.C. § 3624(g)(1). If an inmate has earned FSA time credits under the System in an amount that is equal to the remainder of the inmate's sentence, 18 U.S.C. § 3624(g)(1)(a), and otherwise meets the eligibility criteria laid out in 18 U.S.C. § 3624(g)(1), then the prisoner is eligible to have credits applied to prerelease custody and/or early transfer to supervised release. 18 U.S.C. § 3624(g)(2).

BOP is granted discretion to allocate these credits to either prerelease custody or supervised release. *See* 18 U.S.C. § 3632(d)(4)(C) (assuming the inmate has a term of supervised release as part of his sentence). Congress defines prerelease custody as home confinement (HC) or placement in a residential reentry center ("RRC" or "halfway house"). 18 U.S.C. § 3624(g)(2). Although Congress has thus authorized the BOP to utilize either or both types of prerelease custody, it does not define when one should be used rather than the other. Instead, this is left to the discretion of

the BOP except that the FSA prohibits application of FSA time credits towards supervised release for more than 12 months. 18 U.S.C. § 3624(g)(3).[2]  Notably, a transfer to prerelease custody (as opposed to supervised release) does not terminate an inmate's confinement. Instead, this is merely a transfer to a lower level of confinement, as generally left to the discretion of BOP by 18 U.S.C. § 3621(b)("The [BOP] shall designate the place of the prisoner's imprisonment…").

Ultimately, an inmate must continue his confinement, at the appropriate level as determined by BOP, until his sentence is satisfied. Unlike prerelease custody, a transfer to begin supervised release is in effect an early release. The BOP has exercised this discretion to apply the first 365 FSA time credits earned by an eligible inmate to early release (i.e. supervised release). *See* Program Statement 5410.01 at 16 (for inmates meeting eligibility criteria, "up to 365 days of earned FTCs will be automatically applied to early release")(available at www.bop.gov). This policy maximizes the early release benefit to eligible inmates.

BOP policy also provides for situations where an inmate is not considered to be "successfully participating" in EBRR programs or PAs, as required by the FSA, 18 U.S.C. §§ 3632(c) and 3624(g)(1), and therefore cannot earn FSA time credits to be applied to prerelease custody or supervised release. Such circumstances may include, but are not limited to, designation status outside the institution (e.g., outside medical trip or escorted trip, in-transit or at an in-transit facility, a furlough for the full day, etc.) or temporary transfer to the custody of another Federal or non-Federal government agency (e.g., on state or federal writ, transfer to state custody for service

---

[2] "If the sentencing court included as a part of the sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment pursuant to section 3583, the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under 3632. 18 U.S.C. § 3624(g)(3); *see also* 28 C.F.R. § 523.44(d) (stating that BOP may apply FSA Time Credits toward early transfer to supervised release "no earlier than 12 months before the date that transfer to supervised release would otherwise have occurred.").

of sentence, transfer to another federal agency, etc.). *See* 28 C.F.R. § 523.41(c); *see also* Program Statement 5410.01, pp. 3-5, 11.15.

### 2. *Analysis*

#### a. **Petitioner is not entitled to release any earlier than already projected.**

The Respondent argues, and this Court agrees, that to the extent that Moparty claims that BOP is not awarding FSA earned time credits towards his release date, that claim is moot, as Moparty is already projected to receive the maximum early release of 365 days for any FSA earned time credits. Doc. 9, p. 18.

"A moot case presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issues it presents." *Goldin v. Bartholow*, 166 F.3d 710, 717 (5th Cir. 1999). "[A]n actual, live controversy must remain at all stages of federal court proceedings, both at the trial and appellate levels." *United States v. Lares-Meraz*, 452 F.3d 352, 355 (5th Cir. 2006). "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *United States v. Heredia-Holguin*, 823 F.3d 337, 340 (5th Cir. 2016).

A court lacks subject matter jurisdiction over a prisoner's petition for writ of habeas corpus if he cannot demonstrate that he is in custody in violation of the law. By virtue of the statute itself, "a writ of habeas corpus shall not extend to a prisoner unless . . . he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Maleng v. Cook,* 490 U.S. 488 (1989)(recognizing the requirements of § 2241(c)(3) as jurisdictional); *see also Rose v. Hodges*, 423 U.S. 19, 21 (1975)("[a] necessary predicate for the granting of federal habeas relief to respondents is a determination by the federal court that their custody violates the Constitution, laws, or treaties of the United States."). Accordingly, for a prisoner to maintain a petition for writ of habeas corpus, he must show that: (1) he is "in custody" (which is not disputed

in this matter), and (2) the custody itself violates the law in some manner (the "case and controversy" requirement).

As noted by Respondent, Moparty has not demonstrated that his projected release date of June 13, 2027 violates the law, nor does he disagree that he has already been found eligible to earn FSA time credits above and beyond 365 days under the FSA time credit assessment that he challenges. The BOP has already projected that Moparty will be eligible to apply the full 365 days to accelerate his release date. Accordingly, the earliest Moparty would qualify for release from custody under either calculation (i.e., without accounting for the disallowed days in transit or holdover status as BOP has properly calculated, or allowing FSA time credits for those disallowed days as Petitioner requests) would still be June 13, 2027. That projected release date already accounts for the maximum amount of FSA time credits authorized by law:

> If the sentencing court included as a part of the sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment pursuant to section §3583, the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, **not to exceed 12 months, based on the application of time credits under 3632**.

18 U.S.C. § 3624(g)(3) (emphasis added). Petitioner is not entitled to immediate release, nor to release any sooner than the date already projected by the BOP, June 13, 2027. Accordingly, he has not shown an entitlement to any habeas relief, and this petition should be dismissed as moot.

### 3. The Court lacks jurisdiction over the conditions of Petitioner's confinement including whether or when to transfer an inmate to prerelease custody.

As noted by the Respondent, different from a dispute about application of FSA time credits towards a release date, a dispute about prerelease custody does not implicate a fact or duration of confinement and is therefore not cognizable in habeas. Moparty argues that he is challenging the "BOP's unlawful revocation of 774 earned FSA Time Credits, which has resulted in the

unconstitutional extension of his term of incarceration," which directly affects the duration of his custody.  Doc. 12, pp.1-2.  He contends that the Respondent's "attempt to frame the relief sought as a challenge to placement in prerelease custody … misconstrues the Petition."  *Id*. at p. 2. However, the Court finds that even if Moparty were credited the FSA time credits that he seeks for the days he was in transit or holdover status and considered ineligible, the Court lacks jurisdiction to review the location and timing of his designation to prerelease custody and this is therefore not a cognizable habeas claim. *See Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005) (describing the core of habeas corpus and finding that it must challenge the "fact or duration of confinement").

The United States Fifth Circuit Court of Appeals has explained that the "core issue" in determining habeas jurisdiction is "whether the prisoner challenges the 'fact or duration' of his confinement or merely the rules, customs, and procedures affecting 'conditions' of confinement." *Cook v. Texas Dept. of Criminal Justice Transitional Planning,* 37 F.3d 166, 168 (5th Cir. 1994); *see also Poree v. Collins*, 866 F.3d 235, 243 (5th Cir. 2017). Further, the Fifth Circuit has specifically recognized that when the relief the petitioner wants is derived from arguments related to the proper interpretation of federal law that, even if the court agreed, would not terminate custody, accelerate its conclusion or alter the level or category of custody [not confinement], then the case is not cognizable in habeas and the court lacks jurisdiction. *Robinson v. Lopinto, III,* 87 F.4th 652, 657 (5th Cir. 2023)(citing *Wilkinson*, 544 U.S. at 86).[3]

---

[3]  "Level of custody" is not to be confused with a condition of confinement, where the former refers to a custodial status and the latter refers to a classification or designation within their custodial status. "It is one thing to say that permissible habeas relief, as our cases interpret that statute, includes ordering a 'quantum change in the level of custody,' such as release from incarceration to parole. It is quite another to say that the habeas statute authorizes federal courts to order the relief that neither terminates custody, accelerates future date of release from custody, nor reduces the level of custody". *See Wilkinson v. Dotson*, 544 U.S. 74, 86 (2005)(J. Scalia concurring)(emphasis added).

The crux of Moparty's argument is that the credits he alleges were "originally awarded and then unjustifiably rescinded" should have advanced his prerelease custody and supervised release eligibility.  Doc. 12, p. 6.  He complains that he was not transferred to a Residential Reentry Center in December 2024 because the BOP reversed course and disqualified days it had previously awarded.  Doc. 17, p. 2.  In his response to the instant motion, Moparty states that he is "not challenging a discretionary placement decision – he challenges the BOP's erroneous refusal to award credits that would reduce the term of incarceration itself."  Doc. 12, p. 2.  However, as set forth above, an award of additional credits would not, in fact, reduce the term of incarceration, as Moparty is not entitled to apply any more than 365 credits to reduce his projected release date. *See* 18 U.S.C. § 3624(g)(3).

Accordingly, Moparty is not challenging the fact or duration of his confinement, instead he is challenging a decision on when he will be transferred from custody at FCIO to prerelease custody (such as community confinement or a residential reentry center). An inmate has no protectable liberty interest in his custodial classification, or in being housed at a particular facility or custody level. *See Olim v. Wakinekona*, 461 U.S. 238, 250-51 (1983). The Constitution does not guarantee an inmate will be placed in a prison facility with any particular security classification. *See Meachum v. Fano,* 427 U.S. 215 (1976). "As long as the conditions or degree of confinement to which the prisoner is subjected are within the sentence imposed upon him and are not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes*, 427 U.S. 236, 242 (1976). "[I]t is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status.'" *McCord v.*

*Maggie*, 910 F.2d 1248, 1250 (5th Cir. 1990), *citing Wilkerson v. Maggio*, 703 F.2d 909, 911 (5th Cir. 1983).

Congress has also acted to preclude judicial review of BOP's classification and designation decisions, including transfers to prerelease custody: "Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court." 18 U.S.C. § 3621(b)(5). Indeed, "the provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter." 18 U.S.C. § 3625 (referring to sections 3621 through 3626). More specifically, 18 U.S.C. § 3624(c)(4) (regarding prerelease custody) explicitly states that "nothing in this subsection shall be construed to limit or restrict the authority of [BOP] under Section 3621." For this reason, BOP's determinations under sections 3621 and 3624 are unreviewable by the Court. *See e.g. Cook v. Wiley*, 208 F.3d 1314, 1319 (11th Cir. 2000)(applying section 3625 to preclude judicial review of 3621(e) decision).

Regardless of whether Moparty is awarded FSA earned time credits for the period in question, he cannot be granted an earlier transfer to prerelease custody by this Court. This Court has no jurisdiction to review the BOP's discretionary decisions on whether and when he should be designated to prerelease custody.  For that reason, his habeas petition should be dismissed.

### IV.    CONCLUSION

The Court has considered all arguments. Those not specifically addressed would not have changed the outcome.  For the foregoing reasons,

**IT IS RECOMMENDED** that the defendant's Motion to Dismiss (doc. 9) be **GRANTED** and this matter be **DISMISSED** for lack of subject matter jurisdiction.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in chambers this 16th day of March, 2026.

_____
THOMAS P. LEBLANC
UNITED STATES MAGISTRATE JUDGE